```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                   FORT WORTH DIVISION

NKIRUKA OBUEKWE                  §
                                 §
VS.                              §   CIVIL ACTION NO. 4:11-CV-762-Y
                                 §
BANK OF AMERICA, N.A., et al.    §
```

ORDER GRANTING IN PART AND
<u>DENYING IN PART MOTION TO DISMISS</u>

Before the Court is the Motion to Dismiss (doc. 22) filed by defendants Bank of America, N.A. ("Bank of America"), as a named party and as successor by merger to BAC Home Loans Servicing, L.P, and The Bank of New York Mellon, as Trustee for the Certificate Holders of CWABS, Inc., Asset-Backed Certificates Series 2007-BCI ("Bank of New York").  After review, the Court will grant the motion in part and deny it in part.

I.   Background

In November 2006, plaintiff Nkiruka Obuekwe obtained a mortgage loan from Wilmington Finance, Inc. ("Wilmington"). (Am. Compl. ¶ 9.)  The loan is evidenced by a promissory note made payable to Wilmington, and the note is secured by a deed of trust naming Mortgage Electronic Systems, Inc. ("MERS"), as nominee for Wilmington and its successors and assigns. (*Id.*; Defs.' App. Exs. A, B.)  The deed of trust was subsequently assigned to Bank of New York and recorded in the official public records of Tarrant County, Texas.  (Am. Compl. ¶ 9; Defs.' App. Ex. C.)  Bank of America

became the servicer of the loan.  (Am. Compl. ¶ 9.)

After Obuekwe fell behind in her payments, she contacted Bank of America to obtain a loan modification.  (*Id.* at ¶ 10.)  Obuekwe alleges that Bank of America "employees told [her] that she qualified for a loan modification and that [Bank of America] does not foreclose during the loan modification review process." (*Id.*) Obuekwe further alleges that she was told "to not send any more payments during the loan modification process."  (*Id.*)

Obuekwe submitted the necessary loan-modification paperwork in March 2011.  (*Id.*)  Thereafter, she contacted Bank of America "frequently to check on the status of her loan modification and to ask if she could make a payment."  (*Id.* at ¶ 11.)  In each instance, she was assured that Bank of America would not initiate foreclosure proceedings during the loan-modification process and that Bank of America "would not accept any payments during the evaluation process."  (*Id.*)  Obuekwe alleges, however, that she grew "anxious because [Bank of America] was calling her all hours of the day telling her she needed to make a payment but [its] loss mitigation department told her not to pay."  (*Id.*)

Obuekwe received a debt-validation notice in July 2011 from ReconTrust Company, N.A., indicating that Obuekwe was indebted to Bank of America in the amount of $130,031.07 and that she had thirty days to dispute the debt. (*Id.* at ¶ 12.)  Obuekwe contacted Bank of America about the notice, and Bank of America told her

2

"everything was fine" and that her "loan modification was under review." (*Id.*) Nevertheless, later that month, Obuekwe received a notice of substitute trustee sale stating that a foreclosure sale was set for September 6, 2011. (*Id.*) Obuekwe called Bank of America about the letter and, once again, she was assured "that she was in the loan modification review" and that Bank of America would "not foreclose during this process." (*Id.*)

That same month, Obuekwe received another letter from Bank of America advising her that her loan had been referred to the foreclosure-review committee and that she was potentially eligible for a repayment plan or loan modification. (*Id.* at ¶ 13.) Obuekwe contacted Bank of America to learn why her home was in foreclosure when she had already properly initiated the loan-modification process. (*Id.*) She was informed that she was not, in fact, in the loan-modification program because she had not sent in the necessary paperwork. (*Id.*) Obuekwe disputed this and explained that she had submitted the loan-modification paperwork in March 2011. (*Id.*)

After asking Obuekwe some questions about her financial situation, Bank of America told her that she qualified for a loan modification and instructed her to re-send the necessary documents. (*Id.*) Obuekwe did so on August 29, 2011. (*Id.*) Obuekwe alleges that when she expressed concern over the September 6 foreclosure sale, Bank of America assured her she could "disregard the

3

foreclosure notice." (*Id.*) Bank of America allegedly would not, however, "give [Obuekwe] anything in writing stating that the foreclosure was canceled." (*Id.*)

Obuekwe alleges in summary that she "tried for months to get current on her note but [Bank of America] refused to accept payments; charged [her] with late fees, interest[,] and penalties; and through various agents . . . made numerous demands and representations concerning the amounts allegedly owed on [her] mortgage loan [that were] false, inaccurate, and . . . reckless[]." (*Id.* at ¶ 15.) According to Obuekwe, she "never received a notice of intent to accelerate, a notice of acceleration[,] or the right [to] cure or reinstate her note." (*Id.*)

On September 2, 2011, Obuekwe filed the instant lawsuit in the 236th Judicial District Court, Tarrant County, Texas. Defendants removed the case to this Court on October 24 (doc. 1). Subsequently, Obuekwe filed a motion to remand (doc. 8), but the Court denied it (doc. 29). Obuekwe then amended her complaint on November 21 (doc. 14), asserting claims for (1) breach of contract and anticipatory breach of contract, (2) unreasonable collection efforts, (3) violations of the Texas Consumer Credit Code and the Debt Collection Practices Act ("TDCPA"), and (4) negligent misrepresentation. By the instant motion, Defendants seek dismissal of Obuekwe's claims under Federal Rule of Civil Procedure 12(b)(6).

4

II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. *See* Fed. R. Civ. P. 8(a). Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007) (citations omitted). The Court need not

credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations omitted) (internal quotation marks omitted). "A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, (5th Cir. 2007) (footnote omitted). In addition, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

III. Analysis

    A.   Breach and Anticipatory Breach of Contract

"In Texas, 'the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex.App.--Houston [14th Dist.] 2005, pet. denied)). "[T]o prevail on a claim for anticipatory breach, a plaintiff must establish '(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party.'" *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *4 (N.D. Tex. Feb. 21, 2012) (Boyle, J.) (quoting *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004)). Obuekwe's claims for breach and anticipatory breach of contract appear to be based on two alleged agreements: (1) the deed-of-trust contract and (2) an oral unilateral contract by which Bank of America promised to modify Obuekwe's loan and refrain from foreclosing on the mortgage property.

        1.   The Deed of Trust

Obuekwe asserts essentially four theories as to how Defendants breached the deed of trust. First, Obuekwe alleges that Defendants

7

breached the deed of trust by accelerating the balance due and posting the property for foreclosure without providing her with proper notice or affording her the opportunity to cure her default and reinstate the note.  Second, Obuekwe alleges that Defendants waived their right to foreclose on the mortgage property and, thus, breached the deed of trust when they posted the property for foreclosure.  Third, citing the Uniform Commercial Code, Obuekwe alleges that the deed of trust contained an implied term of good faith and fair dealing and that Defendants breached that term. Fourth, Obuekwe alleges that MERS's purported assignment of the deed of trust to Bank of New York was ineffective because MERS was not the holder of the note.  According to Obuekwe, when MERS was named as Wilmington's nominee on the deed-of-trust instrument, the note and deed of trust were split, and the mortgage debt became unsecured.  Thus, argues Obuekwe, Defendants lacked the authority to foreclose on the mortgage property.

As an initial matter, the Court notes that it is hard-pressed to see how Defendants can be liable for breach of the deed of trust if the deed of trust was never properly assigned to them.  In any event, as Defendants correctly contend, Obuekwe's "show-me-the-note" argument is without merit.  "Under Texas law, a deed of trust is a mortgage with a power to sell on default.  A mortgage created by a deed of trust is an interest created by a written instrument providing security for payment." *DeFranceschi v. Wells Fargo Bank,*

*N.A.*, No. 4:10-CV-455-Y, 2011 WL 3875338, at *4 (N.D. Tex. Aug. 31, 2011) (slip opinion) (citations omitted). "[I]f a deed of trust expressly provides the power of sale, then a party to that deed of trust has such authority." *Wigginton v. Bank of N.Y. Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071, at *3 (N.D. Tex. July 7, 2011) (Fish, J.) (citations omitted) (internal quotation marks omitted).

In the instant case, Obuekwe's note identifies the deed of trust and indicates that the deed "protects the Note Holder from possible losses [that] might result if [Obuekwe] do[es] not keep the promises [that she made] in th[e] Note." (Defs.' App. Ex. A, at 2-3.) Obuekwe, by signing the note and deed of trust, acknowledged that MERS was to be the nominee of Wilmington and its successors and assigns and that the debt could subsequently be transferred. Under the terms of the deed of trust, MERS was given the right to foreclose on the property and authorized to assign that right to another.[1] (*Id.* at Ex. B., at 3.) It is therefore clear that when MERS assigned the deed of trust to Bank of New York, this assignment was effective to transfer the debt to Bank of New York and to empower Bank of New York to enforce the deed of trust and foreclose on the mortgage property. Obuekwe's argument that Defendants lacked the power to foreclose because they did not

---

[1] In addition, Obuekwe lacks standing to challenge the various assignments of the deed of trust because she was not a party to those agreements. *See DeFranceshi*, 2011 WL 3875338, at *4.

9

have possession of the note and that this somehow amounted to a breach of the deed of trust is without merit.

Obuekwe's waiver argument similarly fails. "Under Texas law, a 'waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right.'" *Sanghera*, 2012 WL 555155, at *4 (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)). To plead a waiver, the plaintiff must allege "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* (quoting *Ulico*, 262 S.W.3d at 778) (internal quotation marks omitted).

The allegations in Obuekwe's amended complaint would not, if true, establish that Bank of New York intentionally waived its right to foreclose. Indeed, the deed of trust specifically provides that "any forbearance by Lender in exercising any rights or remedy, including . . . Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy."[2] (Defs.' App. Ex.

---

[2] Obuekwe argues that "Lender was defined in the Deed of Trust as [Wilmington]" and that "[n]either [Bank of New York] nor [Bank of Amerca] are the Lender." (Pl.'s Resp. Br. 24.) But as previously noted, Bank of America has been assigned Wilmington's rights and interests under the deed of trust.

B. at 7, ¶ 12.)

Also unpersuasive is Obuekwe's contention that the deed of trust contained an implied term of good faith and fair dealing. "[B]ecause the Deed of Trust places a lien on real property, it is not governed by the UCC." *Water Dynamics, Ltd. v. HSBC Bank USA Nat'l Ass'n*, No. 4:11-CV-614-A, 2012 WL 34252, at *6 (N.D. Jan. 6, 2012) (McBryde, J.) (quoting *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex.App.--San Antonio 1998, no pet.)) (internal quotation marks omitted). Furthermore, "Texas does not recognize a covenant of good faith and fair dealing between 'a mortgagor and a mortgagee.'" *Id.* (quoting *FDIC v. Coleman*, 795 S.W.2d 706, 708-10 (Tex. 1990)).

Ultimately, Obuekwe cannot state a claim for breach of the deed of trust because Obuekwe admits that she defaulted on the loan. An essential element of a breach-of-contract claim is "performance or tendered performance by the plaintiff." *Mullins*, 564 F.3d at 418. Because Obuekwe cannot meet this element, she has failed to state a claim for breach of the deed of trust.[3]

---

[3] Obuekwe contends that her default is inconsequential because Defendants elected to treat the contract as continuing. But her allegations, along with the deed of trust, make it evident that Defendants have not made such an election. The mere fact that Defendants did not foreclose on the mortgage property immediately upon Obuekwe's default does not mean that Defendants have made the decision to overlook Obuekwe's breach and move forward. Indeed, the fact that Defendants have pursued loan-modification options indicates that they are not prepared to waive their rights under the deed of trust and move forward based on Obuekwe's current tender.

    2.   Oral Unilateral Contract

Obuekwe alleges that she and Bank of America entered into a unilateral oral contract by which Bank of America promised to modify her mortgage loan and to not foreclose on her property during the loan-modification process. Obuekwe further alleges that Defendants' actions in accelerating the balance due and posting the property for foreclosure constitute a breach and an anticipatory breach of that unilateral oral contract. Defendants contend that Obuekwe's alleged oral contract is barred by the statute of frauds. After review, the Court agrees.

"Texas law does not recognize the validity of oral loan modification agreements in these circumstances." *Water Dynamics*, 2012 WL 34252, at *4. Rather, a "loan agreement exceeding $50,000 in value must be in writing." *Id.* (citing Tex. Bus. & Com. Code Ann. § 26.02(b) (West 2012)). As this Court has noted, "[a] 'loan agreement' includes any promise, agreement, understanding, or commitment pursuant to which any financial institution delays repayment of money or . . . otherwise make[s] a financial accommodation." *Id.* (citing Tex. Bus. Com. Code Ann. § 26.02(b)). Therefore, "any agreement to modify the deed of trust and reduce payments on the note must be in writing." *Id.* Because Obuekwe acknowledges in her amended complaint that her alleged unilateral contract is not in writing, her claims for breach and anticipatory

12

breach of the unilateral contract fail.[4]

### B. Unreasonable Collection Efforts

Under Texas law, unreasonable collection efforts is an intentional tort. *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (Lynn, J.). "The elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *Id.* (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.--Dallas 2009, no pet.)). This Court has previously noted, however, that "to recover on such a claim, a plaintiff must prove that 'a defendant's debt collection efforts amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'" *Id.* (quoting *Steele v. Green Tree Servicing, LLC*, No. 3:09-cv-0603-D, 2010 WL 3565415, at *6 (N.D. Tex. Sept. 7, 2010) (Fitzwater, C.J.)). Generally, "mental anguish alone is insufficient to sustain a recovery of

---

[4] Obuekwe attempts to get around the statute of frauds by arguing for the application of the promissory-estoppel and partial-performance exceptions. But promissory estoppel does not save Obuekwe's alleged oral contract because Obuekwe has not alleged that Defendants promised to reduce the oral unilateral contract to writing. *See Ford v. City Bank of Palacios*, 44 S.W.3d 121, 139 (Tex.App.--Corpus Christi 2001, no pet.). Furthermore, Obuekwe has not explained what she did to partially perform under the contract. She alleges that her "not send[ing] any more payments during the loan modification process" was "unequivocally referable to the alleged oral agreement and corroborate[s] the existence of that agreement." (Pl.'s Resp. Br. 18.) But "[t]he acts of performance relied upon to take a parol contract out of the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced." *Exxon v. Breezevale Ltd.*, 82 S.W.3d 429, 441 (Tex.App.--Dallas 2002, no pet.). Merely not making mortgage payments does not meet this requirement, especially given that Obuekwe has previously failed to make required payments under the note. Thus, neither promissory estoppel nor partial performance helps Obuekwe avoid application of the statute of frauds to her alleged oral unilateral contract.

damages, at common law, for unreasonable collection efforts." *McDonald v. Bennett*, 674 F.2d 1080, 1088 (5th Cir. 1982) (citations omitted).

Obuekwe alleges that Bank of America called her at "all hours of the day telling her she needed to make a payment" even though its "loss mitigation department [had] told her not to pay." (Am. Compl. ¶ 11.) In the Court's view, what Obuekwe has alleged is bad business--a situation in which Bank of America's left hand did not know what its right hand was doing. While certainly annoying, this does not rise to the level of "a course of harassment that was willful, wanton, [or] malicious." *Narvaez*, 757 F. Supp. 2d at 635 (citing *Steele*, 2010 WL 3565415, at *6). Indeed, Obuekwe's own allegations indicate that the "numerous demands and representations [that Bank of America made] concerning the amounts allegedly owed on [her] mortgage loan [were] false, inaccurate, and . . . reckless[]"--not willful, wanton, or malicious.[5] (Am. Compl. at ¶ 15.) But even assuming that Obuekwe has alleged a willful course of harassment, she has not alleged that Defendants' conduct was

---

[5] Obuekwe asserts that "Defendants' conduct was not only unreasonable but also malicious and wanton." (Am. Compl. ¶ 31.) But this assertion is not a factual allegation; rather, it is merely her characterization of her other allegations, which, as the Court has already noted, do not establish malicious and wanton conduct in connection with the collection of a debt. Obuekwe does allege that Defendants "intentionally misled and delayed Plaintiff to the point of foreclosure" and acted "deceptively" by "impos[ing] numerous additional charges upon [her] mortgage loan account." (Am. Compl. ¶ 27.) But these allegations do not establish willful or wanton harassment in the collection of Obuekwe's debt. Instead, these allegations are directed more at Defendants' general conduct in managing her loan.

"intended to inflict mental anguish and bodily harm" upon her. *Narvaez*, 757 F. Supp. 2d at 635 (citing *Steele*, 2010 WL 3565415, at *6). Thus, she has failed to state a claim of unreasonable collection efforts.

    C.    TDCPA

Obuekwe alleges that Defendants' "acts, omissions, and conduct" violated the TDCPA, including sections 392.301, 392.303, and 392.304 of the Texas Finance Code. More specifically, Obuekwe contends that Defendants threatened to take an action prohibited by law in violation of subsection 392.301(a)(8); collected or attempted to collect charges not expressly authorized by agreement in violation of subsection 392.303(a)(2); misrepresented the character, extent, or amount of a consumer debt in violation of subsection 392.304(a)(8); and used deceptive means to collect a debt in violation of subsection 392.304(a)(19).[6] (Am. Compl. ¶ 35.)

Obuekwe's claims under subsections 392.301(a)(8) and 392.303(a)(2) are deficient. With regard to the former, Obuekwe does not identify what "action prohibited by law" Defendants threatened to take. Assuming Obuekwe is challenging Defendants' posting of the mortgage property for foreclosure, Obuekwe has not alleged facts establishing that such posting was unlawful. The

---

[6] Defendants contend that Obuekwe's claims are preempted by the National Bank Act. Defendants, however, do not elaborate or provide any analysis in support of this argument. The Court, therefore, will not address it.

15

Court has rejected Obuekwe's arguments in connection with her breach and anticipatory breach of contract claims, including her argument that Defendants lacked the authority to enforce the deed of trust.

Concerning her claims under subsection 392.303(a)(2), Obukewe's allegations are too conclusory. That subsection "prohibits debt collectors from 'collecting or attempting to collect interest or a charge, fee, or expense incidental to the debt obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.'" *Sanghera*, 2012 WL 555155, at *8 (quoting Tex. Fin. Code § 392.303(a)(2) (West 2012)). Obuekwe has not alleged facts showing that Defendants attempted to collect charges not authorized by the deed of trust. She merely alleges in conclusory fashion that Defendants "imposed wrongful charges (i.e., penalties, attorney fees, corporate advances) on [her] mortgage." (Am. Compl. ¶ 36.) These allegations are insufficient to state a claim under subsection 392.303(a)(2). *See id.; see also Swim v. Bank of Am., N.A.*, No. 3:11-CV-1240-M, 2012 WL 170758, at *6 (N.D. Tex. Jan. 20, 2012) (Lynn, J.) ("Plaintiffs merely state a conclusory assertion that Defendants imposed wrongful charges on Plaintiffs' mortgage account. Such an allegation is insufficient to put Defendants on fair notice of Plaintiffs' claims." (footnote omitted)).

16

Obuekwe's allegations are sufficient, however, to state a claim for relief under subsections 392.304(a)(8) and 392.304(a)(19). "Subsection 392.304(a)(8) . . . prohibits a debt collector from misrepresenting the character, extent, or amount of a consumer debt," and "[s]ubsection 392.304(a)(19) operates effectively as a 'catch-all' provision, prohibiting a debt collector from using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Sanghera*, 2012 WL 555155, at *8. "For a statement to constitute a misrepresentation under the [TDCPA], [the defendant] must have made a false or misleading assertion." *Narvaez*, 757 F. Supp. 2d at 632.

Obuekwe has alleged a number of false or misleading assertions made by Defendants, including Bank of America's alleged representation that Obuekwe had been approved for a loan modification. The sum of Obuekwe's allegations is that Bank of America misrepresented the "character, extent, and amount" of Obuekwe's debt. Bank of America, for example, allegedly led Obuekwe to believe that her account was, at least temporarily, in sufficiently good standing to avoid foreclosure when, in fact, it was not. In light of this, the Court concludes that Obuekwe has stated claims for relief under subsections 392.304(a)(8) and 392.304(a)(19).

    D.   Negligent Misrepresentation

17

Under Texas law, a claim for negligent misrepresentation has four elements:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Defendants contend that Obuekwe's negligent-misrepresentation claim is barred by the economic-loss rule and that it is based on a future promise not to do something, rather than a statement of existing fact.[7] Defendants' latter argument fails. As noted above, Obuekwe alleges that Bank of America misrepresented that Obuekwe had been approved for a loan modification.

Defendants' economic-loss-doctrine argument, however, has merit. "Parties to a contract may breach duties in tort or contract or both." *Myers v. Bank of Am., N.A.*, No. 4:11-cv-457, 2012 WL 1107687, at *3 (E.D. Tex. Mar. 31, 2012) (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). But "tort obligations 'are in general obligations imposed by law--apart and

---

[7] Defendants contend that Obuekwe's negligent-misrepresentation claim is subject to the heightened pleading requirements of Rule 9. But because that claim is not accompanied by a fraud claim and does not appear to be based upon allegations of fraud, the Court concludes that Obuekwe's negligent-misrepresentation claim is governed by the standard pleading requirements in Rule 8(a). *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003).

18

independent of promises made.'" *Id.* (citing *Sw. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991)). Consequently, "if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claims may also sound in tort." *Id.* (citing *Sw. Bell*, 809 S.W.2d at 494) (internal quotation marks omitted). "[I]f a tort claim arises solely from the parties' contractual relationship," however, "Texas courts disallow such a claim." *Id.* (citations omitted).

Here, the parties' relationship has its origin in the deed of trust. Obuekwe's claims, moreover, are rooted in that contractual relationship. In the Court's view, Obuekwe's negligent-misrepresentation claim flows from the deed of trust and is barred by the economic-loss rule. *See id.; see also Sanghera*, 2012 WL 555155, at *6 ("[T]he economic loss rule bars Plaintiffs' negligent misrepresentation claim. Any rights or obligations of the parties stemmed from the Deed of Trust. Plaintiffs' alleged loss of title and creditworthiness are economic damages that arise directly from the alleged breach of this contractual relationship; thus, Plaintiffs' tort cause of action is barred by the economic loss rule.").

IV. Conclusion

Based on the foregoing, the Court concludes that Obuekwe has failed to state a claim for breach of contract, anticipatory breach

of contract, unreasonable collection efforts, negligent misrepresentation, or a violation of subsections 392.301(a)(8) and 392.303(a)(2) of the TDCPA. Accordingly, those claims are DISMISSED WITH PREJUDICE. The Court also concludes, however, that Obuekwe has stated claims under subsections 392.304(a)(8) and 392.304(a)(19) of the TDCPA. In view of this, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

SIGNED April 19, 2012.

                                          TERRY R. MEANS
                                          UNITED STATES DISTRICT JUDGE